I represent Mr. Wilson in this case and I'm going to reserve part of my time for rebuttal. The first assignment of error in this case deals with the breach of an immunity agreement. My client believed that he had a contract with the government for immunity. Counsel? Yes. Educate me on this. What it looked like to me was he acted like a person who has a deal. He hoped he would get leniency, but he just never got a deal. And what he had was what you described as detrimental reliance in your brief. But that just substitutes for consideration and it doesn't substitute for a promise. What should I look at in the excerpts to show that he really had a deal as opposed to a hope and arguably even a reasonable expectation that he would get a deal? Well, Your Honor, I believe both the facts and the testimony lead to believe that there was a contract between my client and the police. Can you point to something specific like words on a page? Well, not without flipping through. Where's the offer? Where's the offer? Well, the offer was made on the initial day when he started working with the police. They said we, in the transcript and at the hearing, they said we wanted him to cooperate. And their actions showed that they did, in fact, want him to cooperate because they came back almost the very next day. They set up a phone call for him to make with one of the co-defendants at the airport. They participated in that. But over and over again on tape, the officers say, in essence, you don't have a deal. If you want a deal, you have to cut that with the prosecutors. You're not going to be prosecuted for what you're doing now because you're working with us under the aegis of law enforcement. But anything that went on before, I mean, the officers seemed to me to be very clear. You have to negotiate that with the prosecutors. And moreover, you've got a district court judge concluding that there wasn't a contract, and that's entitled us to deference. Well, Your Honor, that's true. However, they continued to work with him. They led him to believe that every time he would inquire, they'd say, well, the U.S. attorney who's really going to give us the deal you want, who's going to give you immunity, he's on vacation. So where's the offer? Let's go a little further. Let's say they led him on. I'm still troubled by the same thing as Judge Crock. Where's the offer? Well, they led him on. Let's say they did lead him on. Does that do anything for you? It's not fair for the government to have a benefit from essentially tricking him. There's a lot of benefit to the government from trickery in the course of interrogation and investigation that courts have repeatedly approved of. That's true. It sounds to me as though he was offered the benefit of his cooperation in the six-year deal, and he turned that down and then bought himself 20 by going to trial. I mean, it seems that the government said, in consideration of what you've done, we're willing to give you six years. That's correct. And he turned that down. However, that was after the fact. And he believed the entire time that he was going to be getting immunity, and he had even left a voicemail on one of the officers' voicemail systems saying, I'm not going to do this anymore if I don't get immunity. But again, they led him on. But back again, he cannot unilaterally force an immunity agreement on the government by saying things like that. What's your best case that you think entitles you to win this argument? Well, just getting to plain old contract law, that there was an offer. Well, do you have a case? No, Your Honor, I don't. If we go to contract law, then we have to have an offer and acceptance, and I don't see anything in here that amounts to it. What do you want us to read that you say is an offer of immunity? Well, it was an implied offer, and my client believed that he had the deal, and he testified to that at trial. I hear you saying there is nothing that amounts to an offer. It's all in your client's head. Is that what it is? And in the actions of the police officer. I thought the actions were that they kept dancing him around. He kept saying, where's my deal, where's my deal? They kept saying, you have to talk to the AUSA. And whenever he wants to talk to the AUSA, the AUSA is unavailable or he's on vacation or something. So he knows very well that he's doing his part of the deal, and he doesn't have their part of the deal. He doesn't have the promise, and he just keeps doing it in hopes of getting the promise. And then when he gets it, it's a whole lot less than he hoped for, six to serve. That's correct. But he told them, I'm not going to work anymore unless you give me immunity. But they didn't. They didn't. Agent Blanchard said, I sure in hell can't grant you immunity, and you know that. We explained all of this, unquote. And my client believed that what he meant by that was that the U.S. attorney would grant it for him when he returned from his vacation. Well, that's not an offer and an acceptance, and you've got another problem, too. The district court found your client's testimony not credible. They did. So anything your client said can't be believed. Do something for me over the argument before your rebuttal. Find your best words in the excerpts of record and read them to me on the rebuttal, because I'm sympathetic with the idea that your fellow was let on, but it looks like he didn't have a deal. All right. Thank you. I'll reserve my remainder time for rebuttal. Thank you, counsel. Thank you. Do you want to talk about the acceptance of responsibility, acceptance of responsibility at all? On the acceptance of responsibility, my client gave a full confession at the time of his arrest. He cooperated extensively. I mean, his cooperation led to the interception of three separate packages of ecstasy, and that also during his trial, essentially his trial was a long guilty plea. If you look at my brief, I have many excerpts there of his acceptance at trial. He just goes on and on and on explaining his part in the case, and I believe that the court erred in not granting him an acceptance of responsibility. Didn't he continue to claim that somebody planted 100 pills in his briefcase? He did, Your Honor, but he was just exercising his constitutional right to trial. He did go to trial. I've read the transcript, and he seems at every turn to say, well, I was just there. I had nothing to do with it. He disclaims and minimizes everything, and that's why the judge said, you're really not sincere in any of this, so you falsely minimize everything you did. Well, I respectfully disagree with that, Your Honor. If you look at the trial transcript, he goes on and on and on, basically hanging himself during the entire trial, and I'd like to reserve my two minutes. Thank you. Thank you, Counsel. Counsel, I'm going to ask you some serious questions about acceptance of responsibility. Very well. Maybe I read too many books, but I always thought that the one way that the government can break up organized crime, organizations that deal with drugs, organizations that deal with all kinds of bad things, is to have a snitch. And this guy was a snitch, and you don't recognize him as a snitch. You don't want to give him a break in sentencing at all, and you couldn't have solved the case without him, whether his cooperation was maximum or mediocre, or even very little. He was the guy that broke the case. And snitches, when they go to jail, get killed. You don't want to give this guy the benefit of the snitching, and you want to get rid of him. Am I wrong? To some degree, you are wrong, Your Honor. This case, I respectfully suggest, could have been made without his help. Was he a snitch? Oh, he was. And he helped the government? And he did. And you don't want to give him a break? Your Honor, I tried. Are you the one who offered him six years? I am, Your Honor. I tried on August the 30th. I tried again in November. The constant refrain from this defendant was, all or nothing. My letters back to his counsel were simply, as stated in the record, Your Honor, complete immunity is something I cannot do. There was a quiet period from the end of August into November. I'm the one who wrote the letter and reached out again, saying, isn't there some way we can resolve this case recognizing all of our interests? I got no reply, Your Honor. I would have liked to have solved this case in a manner different than it turned out. I tried. But if a defendant makes a repeated stance over and over again that you have to simply let me go, my hands are tied. There is a series of letters. So you're saying the government really did not play fast and loose with this guy. The government didn't basically trick him into cooperation by hinting at a deal that it never made. Rather, the government sincerely was trying to work it out, but he was insisting on a better bargain than he had the power to drive. That's perfectly and exactly correct, Your Honor. He was looking at 20. You offered him six. He wanted zero. In a nutshell. Did you inform the district judge of all the facts about the snitching and your effort to help him? Oh, it all came out in the hearing, Your Honor. And what did the district court judge say? She listened to the evidence, and when the motion was over, she made a ruling. He didn't pay attention to the government. Oh, I think she did pay close attention. Well, you wanted to give him a break. You knew what benefit he was to the prosecution. He was of some benefit. We were trying to recognize that. But if his position is all or nothing, there's not a lot I can do. My obligation at the hearing was to win the hearing. It was a motion to dismiss on a claimed promise. And our position was no promise was ever extended or made or agreed to. That's the structure of the hearing. At sentencing, did you argue against acceptance of responsibility? Yes, I did, Your Honor. On what basis? He only, at trial, he only admitted to the acts which are contained in counts two and three of the indictment. That's a January shipment. He only admitted to that. He not only said he didn't participate in anything beyond that. He filed a motion to dismiss those counts after trial, a rule 29 on those counts after trial. He insisted during the hearing and then again in trial in front of the jury that count eight was the subject of a plant by a police officer. That's the hundred pills? Correct. That is not acceptance. And it is whether you completely manifest acceptance of responsibility for your conduct is a fact-bound inquiry by the court. The court listened to it and declined to give acceptance a downward adjustment. That was her ruling. It's a discretionary call of the court. It was, in this case, wholly proper. And he went to trial, right? Went to trial on all counts? Yes, Your Honor. So it's a hard sell to get the two points, let alone three, if you go to trial. Are you saying that the guidelines, when it uses the words acceptance of responsibility, include only a situation in which a defendant confesses to all of the crimes for which he is being charged? But don't you realize that there's something that happens out there in the real world, an organized crime that is beyond that definition of acceptance of responsibility? And that responsibility that he was giving you, or that he undertook, was to help the government in their fight against these dope-dumpers. Now, isn't that responsibility that deserves credit? Your Honor, but it's not the responsibility called for in that particular section of the guidelines. Because the sentencing guidelines have to be taken literally and not rationally. No, I'm not going to go that far, Your Honor. But the guideline section for acceptance of responsibility has its comments, and it simply doesn't apply to merely providing information or merely being a snitch. My suggestion is that this defendant played fast and loose throughout the entire investigation. When he thought it was to his advantage to make some phone calls, he would make them. When he thought it was to his advantage to secretly record police officers, he would do it. And that's what he's trying to do, is to manipulate the officers, back them into a corner, so that we will turn our sights elsewhere. And I was just unwilling to do that. See, in my opinion, there's something wrong when justice is handicapped by an archaic system of sentencing guidelines, blown up by a bunch of people outside of whatever the outside of it is. And that's not the purpose of the guidelines at all. Don't you interpret the guidelines to do justice? One would hope, Your Honor. Was it done in this case? Hopefully the Supreme Court will tell us soon what we have to look forward to. They'll just bring an end to the whole thing, probably. Start over again. Do you have anything else, Counsel? No, Your Honor. Thank you. Thank you very much. Your turn. I'm just going to try to briefly address your concerns about the immunity offering. Take your time. Take your time. Don't feel rushed. And direct you to a couple places in the transcript. One was during the motion hearing, the transcript of that, pages 168 to 71. That's where there's the testimony about Mr. Wilson contacting Officer Williams and telling him that he was not going to keep on working unless he got his immunity agreement in place. And Officer Blanchard also testified at the time of the arrest, which is located on the transcript of June 5th, 2002, Volume 1 at 33, that Mr. Wilson was not the biggest player, that he wanted the cooperation, and they wanted to learn who else is involved. Also in that same hearing at Volume 1, page 250 to 251, the police told Wilson that you are just a fly speck in all of this. We don't want you. We just want you to take this to the next level. And then there was further testimony, although this was by Mr. Wilson, that he perceived from those statements that they didn't want him, that they just wanted the information that they had, and that there was no doubt that they were now cooperating. And that's contained from the transcript hearing of June 6th, 2000, Volume 2, at page 251 through 253. I have nothing further. Thank you, Counsel. The case just argued. We thank you both as ordered submitted. We'll call the next case, which is United States v. Salvador Navarro-Gonzalez. May it please the Court. Tanya Mora representing Mr. Navarro-Gonzalez. Excuse me. This case involves a clear dispute between the parties on the correct legal standard for the defense of sentencing entrapment. The government argues from a. . .
judges: Ferguson, Trott, Kleinfeld